No. 25-820

─────────────────────────────────────────────

IN THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

─────────────────────────────────────────────

JENNY LISETTE FLORES, *et al.*,

Plaintiffs-Appellees,

*v.*

PAMELA BONDI, *et al.*,

Defendants-Appellants.

─────────────────────────────────────────────

## DEFENDANTS-APPELLANTS' OPENING BRIEF

─────────────────────────────────────────────

YAAKOV M. ROTH
Acting Assistant Attorney General

DREW C. ENSIGN
Deputy Assistant Attorney General

AUGUST FLENTJE
Special Counsel for Immigration
Litigation

WILLIAM C. SILVIS
Assistant Director

MICHAEL A. CELONE
KATELYN MASETTA-ALVAREZ
CHRISTINA PARASCANDOLA
LINDSAY M. VICK
Senior Litigation Counsel

JOSHUA C. MCCROSKEY
Trial Attorney
U.S. Department of Justice
Civil Division
Office of Immigration Litigation
General Litigation and Appeals Section
P.O. Box 878, Ben Franklin Station
Washington, DC 20044
Telephone: (202) 305-1540
joshua.c.mccroskey@usdoj.gov

*Counsel for Defendants-Appellants*

# TABLE OF CONTENTS

I.      **INTRODUCTION** ....................................................................1

II.    **STATEMENT OF JURISDICTION** ..........................................3

III.   **STATEMENT OF THE ISSUES** ...................................................4

IV.   **STATEMENT OF THE CASE** .....................................................5

       A.     Factual Background and Procedural History .......................5

       B.     District Court Order.........................................................10

V.     **SUMMARY OF THE ARGUMENTS**.......................................12

VI.    **STANDARD OF REVIEW**........................................................17

VII.   **ARGUMENT**............................................................................18

       A.     The district court erred by concluding that the 2022 Settlement is a consent decree that the court can modify under Rule 60(b)........18

            1.     The Settlement is not facially a judgment, order, or proceeding.......................................................................19

            2.     The district court's purported jurisdiction to enforce the terms of the Settlement does not establish that the Settlement is a consent decree. .................................................20

            3.     The district court's other reasons for concluding that the Settlement is a consent decree are unavailing. ........................26

            4.     The district court erred to the extent it held that it could order the same relief in response to an unfiled motion to enforce....................................................................31

       B.     Even if the Settlement were a consent decree, the district court abused its discretion in modifying the Settlement. ............................33

            1.     The district court erred in finding that the Settlement required CBP to implement its monitoring protocols to

the satisfaction of the JCM before the Settlement
terminates. ................................................................................35

2.    The district court erred by requiring perfect compliance
with the 2022 Settlement. .........................................................38

3.    The district court erred in failing to apply all four factors
to determine whether modification was warranted.................43

4.    The district court did not suitably tailor the modification
based on the alleged noncompliance that it found....................44

**VIII. CONCLUSION** .........................................................................46

## <u>TABLE OF AUTHORITIES</u>

**CASES**

*A & A Sign Co. v. Maughan*,
    419 F.2d 1152 (9th Cir. 1969) ............................................................32

*Ashker v. Newsom*,
    81 F.4th 863 (9th Cir. 2023) ..............................................................22

*CIGNA Corp. v. Amara*,
    563 U.S. 421 (2011).............................................................................22

*Flores v. Barr*,
    407 F. Supp. 3d 909 (C.D. Cal. 2019) ....................................... 28–29

*Flores v. Barr*,
    No. CV-85-4544-DMG-AGRX, 2020 WL 5666551
    (C.D. Cal. Sept. 18, 2020).................................................................28

*Flores v. Lynch*,
    212 F. Supp. 3d 907 (C.D. Cal. 2015) ..............................................29

*Flores v. Lynch*,
    828 F.3d 898 (9th Cir. 2016) ...............................................................5

*Gov't Emps. Ins. Co. v. Dizol*,
    133 F.3d 1220 (9th Cir. 1998) ..........................................................32

*Horne v. Flores*,
    557 U.S. 433 (2009).............................................................................34

*In re City Equities Anaheim, Ltd.*,
    22 F.3d 954 (9th Cir. 1994) ...............................................................24

*In re Sawtelle Partners, LLC*,
    No. 2:16-BK-21234-BR, 2019 WL 2855786 (B.A.P. 9th Cir. July 1, 2019) ....27

*In re Valdez Fisheries Dev. Ass'n, Inc.*,
    439 F.3d 545 (9th Cir. 2006) .............................................................27

iv

*Int'l Bhd. of Teamsters v. NASA Servs., Inc.*,
    957 F.3d 1038 (9th Cir. 2020) ........................................................37

*Kelly v. Wengler*,
    822 F.3d 1085 (9th Cir. 2016) .......................................... 17, 19

*Kokkonen v. Guardian Life Ins. Co. of Am.*,
    511 U.S. 375 (1994) ................................................... *passim*

*KST Data, Inc. v. DXC Tech. Co.*,
    980 F.3d 709 (9th Cir. 2020) ........................................................17

*Lab./Cmty. Strategy Ctr. v. L.A. Cnty. Metro. Transp. Auth.*,
    564 F.3d 1115 (9th Cir. 2009) ........................................ *passim*

*Lemoge v. United States*,
    587 F.3d 1188 (9th Cir. 2009) ......................................................44

*O'Connor v. Colvin*,
    70 F.3d 530 (9th Cir. 1995) .................................... 18, 20, 27

*Oja v. U.S. Army Corps of Eng'rs*,
    440 F.3d 1122 (9th Cir. 2006) ......................................................17

*Rufo v. Inmates of Suffolk Cnty. Jail*,
    502 U.S. 367 (1992) ....................................................... 16, 45

*Skinner v. Northrop Grumman Ret. Plan B*,
    673 F.3d 1162 (9th Cir. 2012) ....................................... 32–33

*United States v. Asarco Inc.*,
    430 F.3d 972 (9th Cir. 2005) ............................... 4, 15, 36–37

*United States v. Sineneng-Smith*,
    590 U.S. 371 (2020) ....................................................... 31–32

*United States v. Taylor*,
    487 U.S. 326 (1988) ..................................................................32

## STATUTES

8 U.S.C. § 1252(f)(1) ...................................................................................21

28 U.S.C. § 1291 ...........................................................................................3

28 U.S.C. § 1292(a)(1) ..................................................................................3

28 U.S.C. § 1331 ...........................................................................................3

## RULES

Fed. R. App. P. 4(a)(1)(B) .............................................................................4

Fed. R. Civ. P. 23(e) ...................................................... 7, 13, 26–27

Fed. R. Civ. P. 60(b) ................................................................... *passim*

## I. INTRODUCTION

This appeal challenges the district court's unlawful extension of a settlement agreement for 18 months beyond the 30 months that the parties had agreed to—all based on an alleged violation of a putative provision that was not actually part of that settlement agreement. This Court should reverse because the district court (1) lacked authority to extend the settlement agreement—which was *not* a consent decree subject to judicial modification, (2) erred by applying multiple erroneous legal standards, and (3) failed to tailor the relief it ordered.

The agreement at issue is the 2022 U.S. Customs and Border Protection ("CBP") Settlement Agreement applicable to the Rio Grande Valley ("RGV") and El Paso U.S. Border Patrol Sectors ("Settlement"). 2-ER-179–241. Under its unambiguous terms, the Settlement should have terminated on January 29, 2025— two-and-one-half years from its Effective Date. Indeed, the parties agreed the Settlement "shall terminate two and one half years from its Effective Date, or upon the termination of the *Flores* Settlement Agreement, whichever is sooner." 2-ER-184. The parties did not agree to an extension of the termination date, nor did they confer on the district court any authority to extend the Settlement.

Plaintiffs-Appellees ("Plaintiffs") nevertheless asked the district court to modify the Settlement under Rule 60(b) of the Federal Rules of Civil Procedure on the basis of CBP's alleged lack of substantial compliance. Even though the district

court did not sign the Settlement, enter it as a judgment, explicitly incorporate the whole Settlement into an order, or take any other action to adopt the Settlement as a judgment or order, the district court held that the Settlement is a consent decree that could be modified under Rule 60(b). That decision was wrong because private settlement agreements cannot become consent decrees without the consent of the parties and without some affirmative act of the district court to adopt the settlement as a judgment or order of the court. Neither requirement was satisfied here. Accordingly, this Court should reverse.

Even if the Settlement were a consent decree properly subject to Rule 60(b), the district court abused its discretion by ordering the Settlement to be extended by 18 months, and the term of the court-appointed Juvenile Care Monitor ("JCM") to be extended by 6 months with the possibility of additional extensions for both the Settlement and the JCM. Based on an analysis of only one provision of the Settlement, the district court concluded that CBP was not in substantial compliance with the Settlement. The district court (1) held CBP to a standard found nowhere in the Settlement, (2) required perfect compliance instead of substantial compliance, (3) failed to apply all four prongs of the required legal test, and (4) did not suitably tailor the remedy to the alleged violation. Each of these errors requires reversal here.

For all these reasons, the Court should reverse.

## II. STATEMENT OF JURISDICTION

(1)    The district court asserted federal question jurisdiction under 28 U.S.C. § 1331. Defendants-Appellants (the "government") dispute that the district court had jurisdiction to impose class-wide relief and have recently raised this flaw with the *Flores* Settlement Agreement in the district court. *See* Defendants' Notice of Motion to Terminate Settlement Agreement and to Dissolve Injunction of Agency Regulations at 22–24, *Flores v. Bondi*, No. CV 85-4544 (C.D. Cal. May 22, 2025), ECF No. 1567.[1]

(2)    The district court granted in part Plaintiffs' motion to modify the parties' 2022 Settlement by extending the JCM's term by 6 months and the Settlement term by 18 months. Because no issues remain pending before the district court, the district court's decision is final, and this Court has appellate jurisdiction pursuant to 28 U.S.C. § 1291. Alternatively, if the district court's order is determined to be interlocutory, this Court has appellate jurisdiction pursuant to 28 U.S.C. § 1292(a)(1) because the district court purported to be continuing and modifying a consent decree, a type of injunction.

---

[1]    If the *Flores* Settlement Agreement is not terminated by the district court (which would also terminate the order that has led to this appeal), the government reserves the right to raise this jurisdictional flaw in an appeal of such an order.

(3)    The district court entered its order on January 30, 2025. 1-ER-13. The government filed a notice of appeal on February 6, 2025. 3-ER-284–85. The appeal is timely under Fed. R. App. P. 4(a)(1)(B).

## III.   STATEMENT OF THE ISSUES

(1)    Federal Rule of Civil Procedure 60(b) permits a court to relieve a party from a final "judgment, order, or proceeding." Fed. R. Civ. P. 60(b). The district court held that the Settlement is a consent decree to which Rule 60(b) applies even though the district court did not sign the Settlement, enter it as a judgment, explicitly incorporate it into an order, or take any other action to adopt the Settlement as a judgment or order. Did the district court err in holding that the Settlement is a consent decree subject to modification under Rule 60(b)?

(2)    When determining whether modification of a consent decree is permitted due to lack of "substantial compliance" with the agreement, courts must review compliance with the "four corners" of the whole agreement and not focus on one particular provision. *United States v. Asarco Inc.*, 430 F.3d 972, 980 (9th Cir. 2005). The district court modified the Settlement based solely on its conclusion that CBP did not "implement" its monitoring protocols for the JCM's review, even though this requirement is not found in the Settlement and the record demonstrated that CBP substantially complied with the Settlement's provisions. Did the district court err in

determining that CBP failed to substantially comply with the Settlement so as to permit its extension under Rule 60(b)?

(3)    Courts may only modify a consent decree based on a lack of substantial compliance if four conditions are present, one of which is that any proposed modification be "suitably tailored to resolve the problems created by the changed" circumstances. *Lab./Cmty. Strategy Ctr. v. L.A. Cnty. Metro. Transp. Auth.*, 564 F.3d 1115, 1120 (9th Cir. 2009) (quoting *Asarco*, 430 F.3d at 979). After analyzing only two of these four required conditions, the district court found that modification was warranted and extended the entire Settlement for 18 months, even though it found that CBP failed to comply with only one of its many obligations in the Settlement. Did the district court abuse its discretion by failing to apply all four conditions and to tailor its modification to address CBP's monitoring protocols—the alleged changed circumstance warranting modification?

## IV. STATEMENT OF THE CASE

### A. Factual Background and Procedural History

In 1997, the parties to this case entered an agreement known as the *Flores* Settlement Agreement ("FSA"). This Court has found the FSA to be a consent decree. *Flores v. Lynch*, 828 F.3d 898, 905 (9th Cir. 2016). The FSA applies to "[a]ll minors who are detained in the legal custody" of the Immigration and Naturalization Service ("INS"). *Id.* at 902 (quoting FSA ¶ 10). Among other provisions of the FSA,

Paragraphs 11 and 12.A require CBP (as a successor of the INS) to treat "all minors in its custody with dignity, respect and special consideration for their particular vulnerability as minors" and to hold minors in facilities that are "safe and sanitary." 2-ER-181–82 (quoting FSA ¶¶ 11–12.A).

On June 26, 2019, Plaintiffs filed an *ex parte* application for a temporary restraining order, asserting that CBP was violating the 1997 FSA. *See* 2-ER-242–48 ("2019 TRO Motion"). Plaintiffs alleged that custodial conditions at multiple CBP facilities were not in compliance with the FSA and that CBP's purported noncompliance had created a "public health emergency." 2-ER-245–46. Plaintiffs focused on allegations of "unsafe and unsanitary conditions" at facilities in the RGV and El Paso Sectors of Border Patrol. 2-ER-246; 2-ER-252–54.

On May 21, 2022, the parties jointly filed a notice of settlement to resolve the 2019 TRO Motion. *See* 2-ER-170–78. In the Settlement, the parties intended to "clarify[ ] the Parties' understanding of the meaning of [Paragraphs 11 and 12.A] of the [FSA]," as they apply to conditions in the RGV and El Paso Border Patrol Sectors. 2-ER-181. The parties agreed to dozens of specific requirements relating to conditions for minors in CBP custody in those Sectors. *See* 2-ER-186–200.

In the Settlement, the parties also agreed to a 16-month appointment of the JCM "to monitor compliance in the RGV and El Paso Sectors with the [FSA] as detailed in this [Settlement]." 2-ER-197–99 (Settlement §§ IX.1, IX.10). The

Settlement allows the parties to agree to extend the JCM's term, but "[i]f no agreement is reached, Plaintiffs may petition the Court for a single extension of the Monitor's term." 2-ER-199. Among the dozens of other specific requirements in the Settlement is a requirement that CBP provide the JCM all monitoring protocols that CBP's Juvenile Coordinator's Office ("JCO") developed:

> 12.    CBP shall provide the Juvenile Care Monitor with all monitoring protocols, including medical monitoring protocols and protocols developed by the JCO. The Juvenile Care Monitor may review those protocols and advise Defendant on any enhancements or further refinement. Prior to the effective transition of monitoring functions, the Juvenile Care Monitor shall approve Defendant's final monitoring protocols. The JCO and the CBP Chief Medical Office shall rely on such approved monitoring protocols, but retain discretion to update and amend such monitoring protocols, as appropriate.

2-ER-199–200 (Settlement § IX.12).

Finally, the parties agreed, without a provision for extension, that the Settlement "shall terminate two and one half years from its Effective Date, or upon the termination of the *Flores* Settlement Agreement, whichever is sooner." 2-ER-184 (Settlement § II.8). Two-and-one-half years from the Effective Date was January 29, 2025. The Settlement does not condition the termination date on any action by either party and does not include any provision for an extension of the Settlement.

Because this case is a class action, the parties moved for preliminary and then final approval of the Settlement under Federal Rule of Civil Procedure 23, *see* 2-ER-

166–67, which the court granted on July 29, 2022, 2-ER-159–61. Accordingly, the court denied the 2019 TRO Motion. 2-ER-161. Separately, the parties filed a stipulated order asking for the court to appoint a JCM. 2-ER-153–58. The court issued the stipulated order appointing a JCM and specifying the JCM's duties. 2-ER-143–48. After the parties agreed to three extensions of the JCM's term, the JCM's term expired on December 27, 2024. *See* 2-ER-137; 2-ER-131; 2-ER-125–26.

After entering the Settlement, CBP substantially complied with the Settlement's many specific requirements. *See generally* 2-ER-55–65; 2-ER-67–73; 2-ER-75–85. For example, three pages of the Settlement outline the procedures for Enhanced Medical Support. 2-ER-187–90. This subsection is the largest subsection of the Settlement, as it details the procedures to ensure the health and welfare of minors. CBP's medical support was also one of the focal points of the litigation leading up to the Settlement. *See* 2-ER-172 (noting that the 2019 TRO Motion "primarily" sought relief related to the medical needs of children and a remediation plan to make facilities safe and sanitary). CBP substantially complied with the requirements to provide enhanced medical support to class members. *See* 2-ER-76–85. And the JCM documented CBP's substantial compliance with the substantive medical support requirements. *See* 2-ER-106–14.

8

Similarly, under the Settlement, CBP must provide hygiene and sanitation items to class members, as well as showers and functioning toilets and sinks. 2-ER-193–94. Like medical care, this hygiene and sanitation section was an essential provision that formed the basis for the litigation leading to the Settlement. *See* 2-ER-172. CBP substantially complied with its commitments in this subsection. *See* 2-ER-56–57; 2-ER-61–64; 2-ER-68; 2-ER-70–72. The JCM acknowledged "CBP's general compliance with the conditions and amenity requirements" related to hygiene and sanitation. 2-ER-118.

In addition, in Section VII.1 of the Settlement, the parties agreed that CBP will expeditiously transfer most class members to juvenile-priority facilities and make all reasonable efforts to hold class members in these facilities while in CBP custody. 2-ER-186. CBP also agreed to ensure the safety and security of class members and to maintain an adequate supply of necessary items. 2-ER-186–87. Section VII.4 further requires CBP to provide age-appropriate meals, drinks, and snacks that meet class members' daily caloric needs. 2-ER-190–92. CBP substantially complied with these requirements. *See* 2-ER-56–57; 2-ER-62–63; 2-ER-68; 2-ER-70. CBP substantially complied with many other requirements, such as provisions about distributing guidance consistent with the Settlement, maintaining an appropriate temperature in facilities, having a child-appropriate environment, providing caregivers to support class members in custody, and giving

9

certain legal notices. 2-ER-55–64; 2-ER-67–72; 2-ER-82–84. CBP also developed a robust self-monitoring system. 2-ER-65; 2-ER-73; 2-ER-78; 2-ER-80–82; 2-ER-84–85.

On December 20, 2024, Plaintiffs moved to modify the Settlement under Federal Rule of Civil Procedure Rule 60(b) based on an alleged lack of substantial compliance. *See* 2-ER-86–88. Plaintiffs asked the district court to modify the Settlement's termination provision to extend the Settlement for two-and-a-half more years. 2-ER-89–91. In opposition, the government argued that the Settlement is not a court order or judgment subject to a Rule 60(b) modification—it may only be extended with consent of the parties. 2-ER-29. In the alternative, the government contended that, even if Rule 60(b) applied and the Settlement could somehow be extended beyond the period agreed to by the parties, Plaintiffs failed to make such a showing on the four factors for altering a consent decree under Rule 60(b). *Id.* (citing *Rufo v. Inmates of Suffolk Cnty. Jail*, 502 U.S. 367, 383–93 (1992)). The district court heard oral argument on Plaintiffs' motion on January 29, 2025.

**B. District Court Order**

On January 30, 2025, the district court granted in part Plaintiffs' motion by extending the JCM's term by 6 months and by extending the termination date of the entire Settlement by 18 months to July 29, 2026. 1-ER-13. The district court held that the Settlement is a consent decree subject to Rule 60(b) because the court

granted final approval of the Settlement as a class action settlement and because the Settlement is tied to the FSA, which has been treated as a consent decree. 1-ER-8– 9. The court also highlighted that the parties had provided for some court involvement in resolving disputes, appointing the JCM, approving the JCM's aides, and receiving reports from the JCM. 1-ER-8. The court concluded that it had retained jurisdiction to enforce the Settlement because the court's jurisdiction over the FSA and related matters is ongoing. 1-ER-9–10.

The court held that changed circumstances justified modifying the Settlement because CBP had "not yet satisfied each independent obligation, as is required for there to be substantial compliance." 1-ER-11. Specifically, the district court found that "the 2022 Settlement *explicitly* requires the JCM's approval of CBP's monitoring procedures prior to the termination of monitoring by the JCM, and yet certain monitoring procedures are still being planned by CBP but have not been implemented." *Id.* Notably, however, the district court did not cite to any provision in the Settlement that requires CBP to "implement" its monitoring protocols to the satisfaction of the JCM before obtaining approval of its protocols. Rather, it appears that this requirement only appears in the JCM's report. *Id.* (citing the January 21, 2025 JCM Status Report, 2-ER-21). The court remarked that "[b]ecause the JCM has not been able to 'adequately assess the functional capabilities' of these monitoring systems, CBP cannot be found to be in compliance with that portion of

11

the 2022 Settlement." *Id.* (apparently quoting the January 21, 2025 JCM Status Report, 2-ER-21). The court decided that it did not need to address any other areas of alleged noncompliance because the lack of approved monitoring provisions alone precluded a finding of substantial compliance. *Id.*

The court believed that extending the Settlement by 2.5 years was unnecessary because CBP "has made some notable progress." 1-ER-12. But the court stated that "CBP is not yet capable of wholly fulfilling its responsibilities under the 2022 Settlement and the FSA without the additional support provided by the JCM and the Court." *Id.* For that reason, the court held that an 18-month extension of the entire Settlement was appropriate. 1-ER-12–13.

## V. SUMMARY OF THE ARGUMENTS

This Court should reverse the district court's order extending the Settlement pursuant to Federal Rule of Civil Procedure 60(b) because the Settlement is not a consent decree. Rule 60(b) permits modification only of a "final judgment, order, or proceeding." Fed. R. Civ. P. 60(b). Parties do not have the power to make anything a court judgment, order, or proceeding; and private settlement agreements do not become court orders based on surrounding circumstances. Rather, a court must take some affirmative action clearly adopting the settlement agreement as the court's own judgment or order.

12

Nothing of the sort occurred here. The district court did not sign the Settlement, explicitly incorporate the entire Settlement into an order, or enter the Settlement onto the docket as a judgment. Neither did the court place a separate provision into one of its orders stating that it was "retaining jurisdiction" over the Settlement under circumstances that would have made clear that the court was adopting the Settlement as part of the order.

The district court placed much weight on its purported jurisdiction to enforce disputes about compliance with the Settlement. But courts have jurisdiction to interpret and enforce many statutes, regulations, and contracts that the courts have no power whatsoever to change. The district court's jurisdiction over the subject matter of the Settlement does not resolve the issue of whether the Settlement ever became a court order. It did not.

Similarly, the district court's approval of the Settlement as "fair, reasonable, and adequate" for the class under Federal Rule of Civil Procedure 23(e) does not establish that the Settlement is a consent decree. A class action settlement does not automatically become such a decree when approved through the Rule 23 process. In addition, the factual relationship between the 1997 FSA and the 2022 Settlement does not show that the latter agreement is a consent decree. The 2022 Settlement resolved for a limited time a specific issue regarding some of the FSA's provisions as applied to two Border Patrol sectors. The parties did not ask the district court to

amend the FSA through the 2022 Settlement or to enter the Settlement as a new consent decree.

Finally, the Settlement's dispute resolution and JCM provisions do not make the Settlement a consent decree. In the dispute resolution provisions, the parties identified the district court as the correct forum for raising disputes that could not be resolved informally. The Settlement did not give the court new authority or additional authority beyond resolving those contractual disputes. And the parties' agreement to the dispute resolution provisions did not provide what is necessary for the creation of a court order or judgment—some affirmative act by the court adopting the agreement itself.

Likewise, the JCM provisions contemplated that the parties would ask the court for specific assistance in appointing a JCM. The parties stipulated to the court's appointing a JCM under certain provisions. But the parties never stipulated to the entry of the rest—the vast majority—of the 2022 Settlement as part of a court order. The specific incorporation of only the JCM provisions shows that the parties did not intend for the entire Settlement to be a consent decree and that the court never adopted the entire 2022 Settlement as a consent decree. The bottom line is that the district court never took the requisite affirmative action to transform the whole Settlement into a court order or judgment. Nor did the government "consent" to such

14

treatment, as would be required to create a consent decree. As a result, Rule 60(b) does not apply, and this Court should reverse.

Even if the Settlement could be construed as a consent decree, this Court should nonetheless reverse the district court's order extending the Settlement. The district court's decision to extend the Settlement was based on a misinterpretation of the Settlement, a misunderstanding of the "substantial compliance" standard, and a misapplication of the conditions required for modification. The district court interpreted the Settlement as requiring CBP to "implement" its monitoring protocols to the satisfaction of the JCM. It found that CBP failed to substantially comply with the Settlement solely because it did not meet this requirement. But the Settlement does not require CBP to implement its monitoring protocols before obtaining the JCM's approval; rather, this "requirement" is only found in the JCM's report. Because courts must look to the "four corners" of the agreement to determine whether a party substantially complied, the district court erred in faulting CBP for not complying with a condition that does not exist in the Settlement. *Asarco Inc.*, 430 F.3d at 980.

The district court also applied incorrect legal standards to determine that the Settlement warranted modification. The "substantial compliance" standard considers a party's compliance with the agreement as a whole rather than focusing on one particular provision. *Lab./Cmty. Strategy Ctr.*, 564 F.3d at 1121. The district

court did the latter: it found that CBP's inability to obtain the JCM's approval of its monitoring provisions was sufficient—standing alone—to constitute a changed circumstance warranting modification. The district court's fixation on one provision of the many provisions in the Settlement erroneously applied a "perfect compliance" standard.

Beyond applying the wrong standard for substantial compliance, the district court also failed to determine whether all four conditions permitting modification of a consent decree were present. It is questionable whether Rule 60(b) can be used to impose a consent decree on an institutional defendant beyond its agreed-to scope, since the relevant rule addresses when a court can "*relieve* a party . . . from a final judgment." Fed. R. Civ. P. 60(b)(5) (emphasis added). At the very least, courts must address all four conditions under *Rufo*, 502 U.S. at 384–85, 391, before extending a consent decree's obligations on a government institution. Because the district court only assessed two of the four required conditions, its decision to modify the consent decree constituted legal error and hence was an abuse of discretion.

Lastly, even if modification were warranted, the district court abused its discretion in crafting the scope of the modification. Modification of a consent decree must be suitably tailored to address the problem of the changed circumstance. *Id.* Because the district court extended the entire Settlement for 18 months, including provisions unrelated to CBP's monitoring protocols, the district court did not

16

properly tailor its relief to enable the JCM to assess CBP's implementation of its monitoring protocols. At most, the Court should have simply required CBP to issue the protocols.

## VI.    STANDARD OF REVIEW

This Court reviews *de novo* the district court's interpretation of Federal Rule of Civil Procedure Rule 60(b). *See KST Data, Inc. v. DXC Tech. Co.*, 980 F.3d 709, 713 (9th Cir. 2020) ("Because this is a legal issue that involves the interpretation of the Federal Rules of Civil Procedure, we apply de novo review."); *Oja v. U.S. Army Corps of Eng'rs*, 440 F.3d 1122, 1127 (9th Cir. 2006) ("We also review de novo the district court's application of the Federal Rules of Civil Procedure . . . .").

A decision to extend a consent decree is reviewed for abuse of discretion. *See Lab./Cmty. Strategy Ctr.*, 564 F.3d at 1119. "A district court abuses its discretion when 'its equitable decision is based on an error of law or a clearly erroneous factual finding.'" *Id.* (quoting *Kenney v. United States,* 458 F.3d 1025, 1032 (9th Cir. 2006)). The Court reviews the district court's interpretation of a settlement agreement *de novo*, and, if a consent decree, with some "deference . . . based on the court's extensive oversight of the decree from the commencement of the litigation to the current appeal." *Id.* (alteration in original) (quoting *Nehmer v. U.S. Dep't of Veterans Affairs*, 494 F.3d 846, 855 (9th Cir. 2007)); *Kelly v. Wengler*, 822 F.3d 1085, 1094 (9th Cir. 2016).

17

## VII.   ARGUMENT

**A. The district court erred by concluding that the 2022 Settlement is a consent decree that the court can modify under Rule 60(b).**

Rule 60(b) does not empower the district court to amend the terms of the Settlement. District courts with jurisdiction can interpret and enforce the terms of many different legal documents, including statutes, regulations, contracts, and court orders. But only a court's own orders and judgments are subject to equitable modification under Rule 60. As relevant here, Rule 60(b)(5) states that "the court may relieve a party or its legal representative from a final judgment, order, or proceeding" for any one of several enumerated reasons, including when "applying [the judgment or order] prospectively is no longer equitable." Fed. R. Civ. P. 60(b)(5).[2] Litigants lack the power to make a document into a court order or judgment, and settlement agreements do not automatically become court orders under Rule 60. Indeed, the government must have consented to such treatment at the time of settlement to create a consent decree, and it did not do so here.

Even where (unlike here) the requisite consent is given, the court itself then must take some affirmative step to transform the private agreement into an order or judgment. *See O'Connor v. Colvin*, 70 F.3d 530, 532 (9th Cir. 1995) (per curiam).

---

[2]      The district court did not articulate the subsection in Rule 60(b) that it relied on, but it cited cases that analyzed Rule 60(b)(5). *See* 1-ER-7.

18

The district court here never took such a step to make the Settlement a judgment, order, or proceeding, and the government did not consent to such treatment. Thus, Rule 60(b) does not apply. The district court erred in holding otherwise.

### 1. The Settlement is not facially a judgment, order, or proceeding.

On its face, the Settlement is just that—a private settlement, not a court order. The district court never signed the Settlement and never entered the Settlement onto the docket as an order or judgment. The parties did not negotiate the entry of a court order or agree to it. Moreover, the district court did not identify any order or judgment that incorporated the Settlement. In *Kelly v. Wengler*, this Court held that a settlement became part of a district court order when the order "*explicitly incorporated*" the parties' stipulation that, in turn, "*explicitly incorporated* the parties' settlement agreement." 822 F.3d 1085, 1094–95 (9th Cir. 2016) (emphasis added). But that did not happen here. The parties never asked the district court to incorporate the entire Settlement into an order, and the district court never did so.

In its modification order, the district court held that it need not decide whether it had incorporated the Settlement into its order that approved the Settlement under Rule 23(e), and the district court declined to reach the issue. 1-ER-9 n.4. Nonetheless, the district court noted that it had summarized and "even quoted certain sections of" the Settlement. *Id.* But summarizing and quoting certain sections falls far short of explicitly incorporating the Settlement as a court order, including the

termination provision. This Court has held that "an order 'based on' the settlement agreement, without more, does not 'embody the settlement contract.'" *O'Connor*, 70 F.3d at 532 (quoting *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 381 (1994)).

Even if the court intended to treat the Settlement like an order, that intention is not effective if not embodied in the court's order and given the parties did not consent. *See id.* at 532–33. Moreover, in context, the district court's summary and quotations can only reasonably be read as background for the court's finding that the Settlement was fair, reasonable, and adequate as a class action settlement under Rule 23(e). *See* 2-ER-159–60. For example, the court noted that the "parties have agreed" to certain terms and that the "Agreement provides" for specific provisions. *Id.* Nowhere did the court intimate that it was adopting the summarized and quoted Settlement terms as the terms of its own order at the parties' request. And, notably, the court did not summarize or quote the termination provision. Neither the July 29, 2022 approval order nor any other order incorporated the Settlement. For those reasons, the Settlement is not an order.

### 2. The district court's purported jurisdiction to enforce the terms of the Settlement does not establish that the Settlement is a consent decree.

Under the circumstances here, the district court's ability to resolve contractual disputes about performance under the Settlement before its termination date does not establish that the court had the power to alter the parties' agreement. The district

court's error is apparent from two of the order's headings, "A. Subject Matter Jurisdiction" and "2. The Court Maintains Jurisdiction over the 2022 Settlement." 1-ER-7; 1-ER-9. The district court focused on its subject matter jurisdiction to hear disputes about compliance with the Settlement when no one disputed that jurisdiction. *See* 1-ER-10. The government never contested that the district court had jurisdiction over the subject matter of the 2022 Settlement because it is factually interrelated with the underlying open case and the 1997 FSA.[3] *See* 2-ER-32 n.3. And the government did not contest that the district court had the authority to resolve contractual disputes arising from the Settlement prior to its termination date. The government's argument was simply that the court could not use Rule 60(b) to *modify* the Settlement because the district court had never made the Settlement an order with the parties' consent. The district court recognized that a "consent decree is a hybrid; it is both a settlement and an injunction." 1-ER-7 (quoting *Conservation Nw. v. Sherman*, 715 F.3d 1181, 1185 (9th Cir. 2013)). But the district court never identified

---

[3]     In district court, the government recently filed a motion to terminate the FSA, arguing, *inter alia*, that the district court lacks jurisdiction under 8 U.S.C. § 1252(f)(1) to enforce the FSA as a class-wide injunction. *See* Defendants' Notice of Motion to Terminate Settlement Agreement and to Dissolve Injunction of Agency Regulations at 22–24, *Flores v. Bondi*, No. CV 85-4544 (C.D. Cal. May 22, 2025), ECF No. 1567. However, the government did not make that argument below when litigating Plaintiffs' motion to extend the 2022 Settlement.

when, or how, it made the 2022 Settlement an injunction nor did it conclude that the government agreed to such handling.

In multiple contexts, the Supreme Court and this Court have made clear that the power to *enforce* contractual terms is distinct from the power to *modify* those terms. *See CIGNA Corp. v. Amara*, 563 U.S. 421, 435–36 (2011) ("The statutory language speaks of '*enforc[ing]*' the 'terms of the plan,' not of *changing* them. . . . [W]e have found nothing suggesting that the provision authorizes a court to alter those terms . . . ." (emphasis in original) (quoting 29 U.S.C. § 1132(a)(1)(B))); *Ashker v. Newsom*, 81 F.4th 863, 877 (9th Cir. 2023) ("[E]xtension is stronger medicine than enforcement during the initial monitoring period."). In a breach-of-contract action, a court with jurisdiction can interpret and enforce the relevant contract. That fact does not transform every contract into a judicial order. Subject matter jurisdiction to enforce a contract does not constitute authority under Rule 60(b) to modify an order.

While focusing on subject matter jurisdiction, the district court misunderstood the relevance of *Kokkonen*, 511 U.S. 375. In *Kokkonen*, the federal district court sitting in diversity jurisdiction signed a stipulation of dismissal after the parties settled their state law claims and informed the district judge of the settlement agreement's terms. *See id.* at 376–77. Subsequently, the district court asserted "inherent power" to enforce the agreement. *Id.* at 377. The Supreme Court reviewed

whether the district court had "ancillary jurisdiction" to enforce the agreement. *Id.* at 378. Ancillary jurisdiction "recognizes federal courts' jurisdiction over some matters (otherwise beyond their competence) that are incidental to other matters properly before them." *Id.* The Supreme Court recognized ancillary jurisdiction for two separate purposes: "(1) to permit disposition by a single court of claims that are, in varying respects and degrees, factually interdependent; and (2) to enable a court to function successfully, that is, to manage its proceedings, vindicate its authority, and effectuate its decrees." *Id.* at 379–80 (citations omitted).

In *Kokkonen*, the Supreme Court held that neither type of ancillary jurisdiction covered the district court's enforcement of the parties' agreement. *Id.* at 380. Regarding the first type, the Supreme Court found that "the facts underlying respondent's dismissed claim for breach of agency agreement and those underlying its claim for breach of settlement agreement have nothing to do with each other." *Id.* Here, in contrast, disputes arising under the 2022 Settlement would be factually interdependent with the ongoing district court case and the district court's continuing jurisdiction over the FSA. Therefore, as the district court noted, it has federal question jurisdiction over the *Flores* case as a whole, the FSA, and related controversies arising from the 2022 Settlement. 1-ER-10.

Importantly, however, the first type of ancillary jurisdiction says nothing about the district court's own orders and decrees. For that reason, the discussion in

23

*Kokkonen* about the first type of ancillary jurisdiction and the district court's discussion here about the factual interrelatedness between the FSA and the 2022 Settlement have nothing to do with Rule 60. Rule 60 discusses when a court may relieve a party of a final order, judgment, or proceeding. Whether two controversies are factually related such that it is efficient for one court to resolve both is an entirely separate issue. This Court recognizes "that the trial court has power to summarily enforce on motion a settlement agreement entered into by the litigants while the litigation is pending before it." *In re City Equities Anaheim, Ltd.*, 22 F.3d 954, 957 (9th Cir. 1994) (quoting *Autera v. Robinson,* 419 F.2d 1197, 1200 (D.C. Cir. 1969)). But the power to *enforce* a settlement agreement does not mean that the settlement agreement is a court order that the court can *modify* under Rule 60(b). Thus, although the district court focused on its subject matter jurisdiction, that issue is irrelevant to the dispute here about Rule 60(b).

The second type of ancillary jurisdiction recognized in *Kokkonen*—relating to the court's power to manage its proceedings, vindicate its authority, and effectuate its decrees—has more potential relevance to an analysis of Rule 60, a rule that applies only to final judgments, orders, and proceedings. In *Kokkonen*, the Supreme Court concluded that the district court did not need to enforce the parties' agreement in order to vindicate the court's authority. 511 U.S. at 380. But the Supreme Court recognized that the "situation would be quite different if the parties' obligation to

24

comply with the terms of the settlement agreement had been made *part of the order* of dismissal—either by *separate provision* (such as a provision 'retaining jurisdiction' over the settlement agreement) or by *incorporating* the terms of the settlement agreement in the order." *Id.* at 381 (emphasis added). Then, the Supreme Court held, "a breach of the agreement would be a violation of the order." *Id.* In the context of an order otherwise dismissing the case, a separate provision retaining jurisdiction "has the same effect" as incorporating a settlement in the order. *Id.* at 381–82. In that dismissal context, a separate provision retaining jurisdiction over the settlement shows that the district court is adopting the settlement as part of its own proceedings or decrees. "Absent such action, however, enforcement of the settlement agreement is for state courts, unless there is some independent basis for federal jurisdiction." *Id.* at 382.

Thus, the Supreme Court did not say that a settlement agreement is a court order whenever a court has jurisdiction to enforce the settlement. Rather, the Supreme Court said that a settlement agreement may become part of a dismissal order when the district court takes affirmative action to make the settlement agreement part of the order—either through incorporation or a separate provision retaining jurisdiction when the district court would otherwise lose jurisdiction. But the district court took neither such action here. As a result, the Settlement never became part of a court order. That the district court has an independent basis for

federal subject matter jurisdiction is irrelevant to the Rule 60 issue of what is an order or judgment.

The district court here believed that it was "not necessary for the Court to include language in its Approval Order that it 'retained jurisdiction' over the 2022 Settlement (or any other orders and proceedings in this case) because its jurisdiction flows from the original retention of jurisdiction language in the *Flores* Agreement." 1-ER-10. As explained above, that conclusion is correct as to the court's subject matter jurisdiction. But that analysis is wrong to the extent the district court applied it to Rule 60. The district court never took an affirmative act to make the entire 2022 Settlement part of an order. Thus, the Settlement is not a court order or judgment.

### 3. The district court's other reasons for concluding that the Settlement is a consent decree are unavailing.

The district court gave several other reasons for concluding that the Settlement is a consent decree. But the district court's reasons do not support its conclusion.

*First*, that the district court approved the Settlement for the purpose of Rule 23(e) does not suffice to make the Settlement a consent decree or otherwise a court order. Here, the district court noted that the "the 2022 Settlement is a class action settlement to which the Court granted preliminary and, following adequate notice to the class, final approval, consistent with Fed. R. Civ. P. 23." 1-ER-8. The Supreme Court and this Court, however, have held that a judge's "mere awareness and approval of the terms of the settlement agreement do not suffice to make them part

26

of his order." *Kokkonen*, 511 U.S. at 381; *In re Valdez Fisheries Dev. Ass'n, Inc.*, 439 F.3d 545, 549 (9th Cir. 2006); *O'Connor*, 70 F.3d at 532. Here, the Court approved the Settlement for purposes of Rule 23(e). 2-ER-161. The Rule 23(e) process ensures that a class settlement is "fair, reasonable, and adequate" for the class. Fed. R. Civ. P. 23(e)(2). It says nothing about whether the terms of the class settlement are part of the Court's order. Not all class-action settlements are court orders or judgments subject to judicial modification under Rule 60. No doubt, if the district court's reasoning were correct, class action litigants would be shocked to discover that their settlement agreements had become consent decrees simply because the district court approved them pursuant to Rule 23(e). And critically, the government did not consent to this treatment of its settlement, ergo no "consent decree." Analogously, in the bankruptcy context, this Court has rejected the argument that a court's approval of a settlement agreement makes the agreement part of the court's order. *See In re Valdez Fisheries Dev. Ass'n*, 439 F.3d at 549; *In re Sawtelle Partners, LLC*, No. 2:16-BK-21234-BR, 2019 WL 2855786, at *6 (B.A.P. 9th Cir. July 1, 2019). The district court's approval under Rule 23 here thus did not make the Settlement part of a court order.

*Second*, the close factual relationship between the 1997 FSA and the 2022 Settlement does not transform the latter into a consent decree. The district court reasoned, "Given that the 2022 Settlement came to fruition solely to clarify the

parties' understanding of, and ensure CBP's compliance with, certain portions of the FSA, it would be nonsensical to treat one as a consent decree and the other as a garden variety settlement agreement." 1-ER-8. Not so. The parties entered the 2022 Settlement to resolve a specific motion in which Plaintiffs made specific allegations concerning one agency's actions in particular instances. *See* 2-ER-242–48. The parties agreed to adopt a certain understanding of the terms in Paragraphs 11 and 12.A of the FSA for a certain time in certain places. 2-ER-183–84 (Settlement § II.1, 4, 8). The 2022 Settlement had value in resolving the 2019 TRO Motion and in clarifying both parties' expectations as to how Border Patrol would comply with the FSA in the specific context of the RGV and El Paso Sectors from 2022 through the beginning of 2025. Fulfilling those purposes did not require the Settlement to be a consent decree.

Relatedly, the district court held that "Plaintiffs' ability to adequately enforce Paragraphs 11 and 12.A of the FSA in this Court necessarily relies upon this Court's ability to interpret, modify, and enforce the 2022 Agreement." 1-ER-9. But that also is not true. That the 2022 Settlement depends on the existence of Paragraphs 11 and 12.A of the FSA does not mean that Paragraphs 11 and 12.A depend on the 2022 Settlement. The Court interpreted and enforced Paragraphs 11 and 12.A for years prior to the 2022 Settlement's existence. *See, e.g.*, *Flores v. Barr*, No. CV-85-4544-DMG-AGRX, 2020 WL 5666551, at *4 (C.D. Cal. Sept. 18, 2020); *Flores v. Barr*,

407 F. Supp. 3d 909, 928 (C.D. Cal. 2019), *aff'd in part, rev'd in part sub nom.*
*Flores v. Rosen*, 984 F.3d 720 (9th Cir. 2020); *Flores v. Lynch*, 212 F. Supp. 3d 907,
913–14 (C.D. Cal. 2015), *aff'd in part, rev'd in part and remanded*, 828 F.3d 898
(9th Cir. 2016). If the parties had intended to amend Paragraphs 11 and 12.A of the
FSA, they easily could have done that. But they did not. Nor did the parties ask the
Court to enter the 2022 Settlement as its own consent decree. The factual relationship
between the 1997 FSA and the 2022 Settlement says nothing about whether the
district court ever made the 2022 Settlement a court order or judgment.

   *Third*, that the parties envisioned a role for the district court regarding dispute
resolution and appointment of the JCM does not show that the court in some way
made the Settlement a court order or judgment. The district court noted that the
Settlement "explicitly included provisions requiring the Court's involvement." 1-
ER-8. The court cited provisions regarding the JCM and dispute resolution. *See id.*
(citing Settlement §§ IX.1–3, XIII). Fundamentally, the parties lack the power to
make anything a court order. So even if the parties had intended for the Settlement
to be a consent decree (and the government did not), it could not become one without
action by the court. The district court never identified what action it took to transform
the Settlement into an order.

   Moreover, the dispute resolution and JCM provisions do not make the
Settlement a consent decree or show any intent to make the Settlement a consent

decree. The dispute resolution provisions demonstrate that the parties recognized that the district court still had the power to resolve contractual disagreements about the Settlement because the underlying case was still open. The parties simply noted that, after proceeding through the dispute resolution process, Plaintiffs may "submit their allegation(s) of breach" to the district court. 2-ER-201. Just as a forum selection clause naming a specific court does not make the contract an order of the named court, so too the parties' mention of the court here did not make the Settlement a court order.

The provisions related to the JCM also do not show that the Settlement was a court order. In fact, the JCM provisions show that the parties specifically knew how to involve the court and ask the court to incorporate terms into orders. The JCM provisions created a discrete area for the district court's involvement—and the parties expressly asked the court to make those provisions part of a separate order— in contrast to the rest of the 2022 Settlement. 2-ER-197–200; 2-ER-149–58. The parties recognized that the district court had the power to do so because of the underlying FSA and ongoing case. The district court had previously appointed a monitor based on the FSA. *See* 2-ER-257–81 (order of October 5, 2018). While the parties asked the district court for assistance in a discrete area with the JCM, the parties did not ask the district court to incorporate any other provisions in the Settlement into an order, including the termination provision. If the parties had

believed that the entire Settlement already was a consent decree, they would not have needed to ask the district court for a separate order to appoint the JCM. The parties' limited request for incorporation of the JCM provisions into a court order is strong evidence that the parties did not intend for the Settlement itself to be part of an order or judgment.

The district court thus erred in concluding that the Settlement is a consent decree. None of the district court's reasons support that conclusion. Because the Settlement is not a consent decree, the district court had no authority to modify the Settlement pursuant to Rule 60(b). The district court erred in holding otherwise.

### 4. The district court erred to the extent it held that it could order the same relief in response to an unfiled motion to enforce.

In a footnote, the district court suggested an alternative basis for its order: "Although Plaintiffs have characterized this matter as a motion to modify, even if the Court were to construe it as a motion to enforce the 2022 Settlement, the remedies imposed herein would remain the same." 1-ER-3 n.2. That approach, however, does not correct the district court's errors.

*First*, Plaintiffs did not bring a motion to enforce. Plaintiffs moved for relief under Rule 60(b) specifically and relied on case law applying Rule 60(b). *See* 2-ER-88. The government had no opportunity to address a hypothetical motion to enforce that was never filed. Because Rule 60(b) does not apply, the district court should have denied the motion. *See United States v. Sineneng-Smith*, 590 U.S. 371, 375

31

(2020) (Courts "rely on the parties to frame the issues for decision and assign to courts the role of neutral arbiter of matters the parties present." (quoting *Greenlaw v. United States*, 554 U.S. 237, 243 (2008)).

*Second*, the district court did not show that the same remedies would have been available in response to a motion to "enforce." At the very least, the district court did not "make a sufficient record of its reasoning to enable appropriate appellate review" for this back up to its Rule 60(b) analysis. *Gov't Emps. Ins. Co. v. Dizol*, 133 F.3d 1220, 1225 (9th Cir. 1998) (en banc) (Declaratory Judgment Act case); *see also United States v. Taylor*, 487 U.S. 326, 336 (1988) (discussing how a district court must "carefully consider" sentencing factors as applied to the particular case "and, whatever its decision, clearly articulate their effect in order to permit meaningful appellate review"). Moreover, it seems unlikely that any doctrine or remedy other than Rule 60(b) permitted the district court to extend the terms of the Settlement without the government's consent. For example, in contract law, reformation allows the court to "reform the contract to capture the terms upon which the parties had a meeting of the minds." *Skinner v. Northrop Grumman Ret. Plan B*, 673 F.3d 1162, 1166 (9th Cir. 2012). But reformation "is not a proper remedy for the enforcement of terms to which the parties had not agreed." *A & A Sign Co. v. Maughan*, 419 F.2d 1152, 1156 (9th Cir. 1969). And it is available only in cases of

fraud or mutual mistake, neither of which has been alleged or proven here. *See Skinner*, 673 F.3d at 1166.

*     *     *

The district court ordered modification of the Settlement under Rule 60(b). But Rule 60(b) applies only to judgments, orders, and proceedings. The parties never asked the district court to make the entire Settlement a consent decree. And the district court never took action to transform the private Settlement into a court judgment or order. Therefore, the Settlement did not fall within Rule 60(b)'s scope. The district court erred by holding otherwise, and this Court should reverse.

### B. Even if the Settlement were a consent decree, the district court abused its discretion in modifying the Settlement.

Even if the Court finds that the Settlement is a consent decree, this Court should still reverse the district court's order because the circumstances did not warrant modification. The government questions whether Rule 60(b) can be used to impose a consent decree on an institutional defendant beyond its agreed-to scope, since the relevant rule addresses when a court can "*relieve* a party . . . from a final judgment." Fed. R. Civ. P. 60(b)(5) (emphasis added). Even if permitted under Rule 60(b), partially modifying a consent decree to extend the obligations imposed on an

institutional defendant is warranted "*only* if the following *four* conditions are met."[4] *Lab./Cmty. Strategy Ctr. v. L.A. Cnty. Metro. Transp. Auth.*, 564 F.3d 1115, 1120 (9th Cir. 2009) (emphasis added) (citing *Rufo v. Inmates of Suffolk Cnty. Jail*, 502 U.S. 367, 393 (1992)). Plaintiffs must show that: (1) a significant factual or legal change occurred after the parties executed the Settlement; (2) they did not anticipate the change when they entered into the Settlement; (3) the changed circumstance makes compliance with the consent decree "more onerous, unworkable, or detrimental to the public interest"; and (4) the proposed modification of the Settlement is "suitably tailored to resolve the problems created by the changed . . . conditions." *Id.* (quoting *United States v. Asarco Inc.*, 430 F.3d 972, 979 (9th Cir. 2005)). This Court has noted that a failure to substantially comply with the terms of a consent decree may be a significant change in circumstances, but "in cases in which courts concluded that extensions of the consent decrees were warranted," the courts had found "near total noncompliance." *Id.* at 1120–21, 1123.

Here, the district court misinterpreted CBP's obligations in the Settlement, applied the wrong standard by requiring perfect—rather than "substantial"— compliance, and failed to determine whether Plaintiffs met all four conditions

---

[4] Rule 60(b) requires a more flexible approach when an institutional defendant seeks to *terminate* the obligations of a decree. *See Horne v. Flores*, 557 U.S. 433, 448–50 (2009).

required for modification. Moreover, even if modification were warranted, the district court failed to suitably tailor the modification to address the JCM's review of CBP's monitoring protocols, which is a one-sentence provision in a 21-page settlement agreement. Instead, the district court broadly extended the entire Settlement for 18 months. Accordingly, at the very least, this Court should reverse the district court's decision and remand with instructions to narrowly tailor the modification to enable the JCM to assess the implementation of CBP's monitoring protocols and no more.

### 1. The district court erred in finding that the Settlement required CBP to implement its monitoring protocols to the satisfaction of the JCM before the Settlement terminates.

The district court erred by faulting CBP for not "implementing" its monitoring protocols to the satisfaction of the JCM, as nothing in the Settlement requires CBP to implement its protocols for the JCM's approval before termination. Because the district court placed a requirement on CBP that does not exist in the four corners of the Settlement, the district court misinterpreted the Settlement and abused its discretion by extending it based on CBP's alleged failure to comply with a manufactured provision.

The first place that courts look when determining whether—and under what conditions—a modification to a consent decree is "permitted," is the agreement itself. *Lab./Cmty. Strategy Ctr.*, 564 F.3d at 1120–23. "Without question courts treat

35

consent decrees as contracts for enforcement purposes." *Asarco*, 430 F.3d at 980. Accordingly, a consent decree "must be discerned within its four corners." *Id.* Thus, determining whether modifying a consent decree is warranted "invariably hinges on interpretation of the very terms of the decree." *Id.* at 981.

Here, the plain terms of the Settlement do not require CBP to "implement" its monitoring protocols for JCM approval, and the district court erred in faulting CBP for failing to comply with a provision that does not exist within the four corners of the Settlement. The Settlement required CBP to develop a robust monitoring system, to engage with the monitors in developing monitoring protocols, and to provide the monitors with its protocols. *See* 2-ER-199–200 (Settlement § IX.12). These were CBP's only obligations under the monitoring provisions, and there was no dispute that CBP fulfilled them. *See* 2-ER-122 (noting that CBP has a "strong framework" for monitoring the quality of medical services and that "[m]any of the organizational and technical requirements of a robust medical monitoring system have been developed and a variety are already being piloted in CBP facilities.").

The district court, however, found that CBP failed to comply with the Settlement because it had not yet "implemented" its protocols for the JCM to assess their "functional capabilities." 1-ER-11. But the Settlement did not require CBP to "implement" its monitoring protocols to the satisfaction of the JCM. Indeed, the Settlement does not provide *any* criteria for CBP to meet the JCM's approval, and

CBP does not control whether the JCM would approve the monitoring protocols. Rather, the JCM appears to have added her own criteria to determine whether approval was warranted. That the JCM declined to approve the protocols because she did not assess CBP's implementation of its protocols—criteria not found anywhere in the Settlement—does not mean that CBP failed to comply with *its* obligations under the Settlement. By placing an obligation on CBP that exists outside the four corners of the Settlement, the district court erred in interpreting the Settlement provisions. *Asarco*, 430 F.3d at 980. Accordingly, the district court abused its discretion in extending the Settlement based on CBP's failure to "substantially comply" with a provision to which CBP never agreed.

Moreover, to the extent the district court interpreted the JCM's approval of CBP's monitoring protocols as a condition precedent to termination, the court's interpretation was wrong. A condition precedent "must be expressed in plain, clear, and unambiguous language." *Int'l Bhd. of Teamsters v. NASA Servs., Inc.*, 957 F.3d 1038, 1043 (9th Cir. 2020). "Courts will neither infer nor construe a condition precedent absent language plainly requiring such construction." *Id.* (cleaned up). The Settlement only states that it will terminate two-and-one-half years after its effective date; it contains no clear, unambiguous language requiring the JCM's approval of CBP's monitoring protocols before it terminates. Nothing in the 2022 Settlement permits an extension of the agreement, even if either party failed to

37

comply with any of the provisions, and particularly where CBP complied with the provisions and any failure to comply lies entirely with a third party. That the Settlement permits CBP to update and amend protocols in its discretion *after* receiving the JCM's approval indicates that the parties did not intend the JCM's approval to be essential to termination. 2-ER-199–200 (Settlement § IX.12). Consequently, the district court's decision to condition termination of the Settlement upon the JCM's approval of the CBP's monitoring provisions was error.

### 2. The district court erred by requiring perfect compliance with the 2022 Settlement.

The district court applied the wrong standard: it found that the government must satisfy "each independent obligation" of the Settlement, but such a standard would require perfect compliance rather than "substantial" compliance. Thus, the district court's reliance on the JCM's decision to not approve the monitoring protocols, while ignoring CBP's general compliance with the vast majority of the Settlement, was an abuse of discretion.

To measure "substantial compliance" with an agreement, the court must consider the party's compliance as a whole, rather than focusing on one particular provision. *Lab./Cmty. Strategy Ctr.*, 564 F.3d at 1121. Courts should not focus "exclusively on just one of the decree's several requirements," while "ignor[ing] the many ways" in which a party "met or exceeded its obligations." *Id.* Unlike perfect or "full" compliance, substantial compliance is a "less precise standard [than full

compliance] that cannot be satisfied by reference to one particular figure, while ignoring alternative information." *Id.* at 1122. Courts must employ a "holistic view of all the available information" to determine whether a party's compliance with the decree "overall was substantial, notwithstanding some minimal level of noncompliance." *Id.*

In *Labor/Community Strategy Center*, this Court found that the defendant, a county-transit authority, had substantially complied with the terms of a consent decree, even though it did not comply with each independent requirement. The transit authority was unable to fully comply with the reduction of bus overcrowding, which was "an important part of the decree," but this was just one of three "essential" and "core" requirements of the decree. *Id.* Because the transit authority met or exceeded the other two "essential" and "core" obligations, this Court found that the transit authority had shown it substantially complied with the decree. *Id.* The same is true here.

The evidence before the district court demonstrated that CBP complied with the vast majority of the Settlement provisions, including the essential and core obligations related to safe-and-sanitary conditions and medical care. 2-ER-55–65; 2-ER-67–73; 2-ER-75–85. But the district court overlooked CBP's undisputed compliance and instead fixated on one, discrete provision in holding that CBP failed to substantially comply with the Settlement. The court stated that, to show

39

substantial compliance, CBP was "required" to "satisf[y] each independent obligation" of the Settlement. 1-ER-11. But satisfying "each independent obligation" is a requirement for perfect or full compliance, not substantial compliance. By requiring CBP to demonstrate "full" compliance, the district court applied the wrong legal standard. *Lab./Cmty. Strategy Ctr.*, 564 F.3d at 1122.

Indeed, requiring CBP to "satisfy each independent requirement" is a nearly insurmountable task. The 2022 Settlement contains over 100 "independent obligations" that CBP must comply with, ranging from which type of facility may house class members to requirements for contracting officers to standards for medical assessments. Despite that the Settlement contains over 100 independent obligations and is 21 pages in length single spaced, the district court focused on one sentence, buried inside a paragraph that contains various other obligations, on page 19 of the document. *See* 2-ER-199 (Settlement § IX.12). That sentence does not even clearly impose an obligation on CBP. It reads, "Prior to the effective transition of monitoring functions, the Juvenile Care Monitor shall approve Defendant's final monitoring protocols." *Id.* The district court held that CBP's alleged failure to comply with this one-sentence provision—alone—was sufficient "to preclude CBP from meeting the 'substantial compliance' standard." 1-ER-11. By doing so, the district court ignored the many ways that CBP had met or exceeded its obligations.

40

Indeed, regarding most of CBP's obligations—including the essential and core provisions—Plaintiffs did not allege any violations, and the JCM noted that CBP was compliant. For example, no dispute exists that CBP complied with the following sections, each of which contain several independent provisions:

a. Transferring of juveniles to Juvenile Priority Facilities (§ VII.1.1)

b. Ensuring safety and security of class members and maintaining adequate supply of items (§ VII.1.4, 1.6)

c. Providing age-appropriate meals and snacks that meet class members' caloric needs (§ VII.4)

d. Enhancing and ensuring medical support for class members (§ VII.3)

e. Maintaining an ambient temperature and stock of warm clothing and blankets (§ VII.5)

f. Providing class members with sufficient space, a mat, and a blanket for sleeping (§ VII.6.)

g. Providing showers and hygiene kits immediately upon arrival and at 48-hour intervals thereafter (§ VII.7).

Importantly, CBP complied with the "essential" and "core" requirements of the Settlement, thereby meeting the goals of the original litigation. *Lab./Cmty. Strategy Ctr.*, 564 F.3d at 1122. The case for not extending the Settlement here was even stronger than in *Labor/Community Strategy Center* where one of the "essential"

41

and "core" requirements was not met. *Id.* Plaintiffs' 2019 TRO Motion, which resulted in the 2022 Settlement, "primarily" sought relief related to the medical needs of children and a remediation plan to make facilities safe and sanitary. 2-ER-172. CBP has undisputably complied with these primary concerns: it has fulfilled its obligation for enhanced medical care, ensured the safety of class members, and provided adequate hygiene items and routines. *See* 2-ER-106–14 (documenting CBP's actions to satisfy the Enhanced Medical Support provisions); 2-ER-106 (noting that class members "feel safe in CBP custody"); 2-ER-118 (reporting CBP's general compliance with the conditions and amenity requirements).

Conversely, the parties did not note the monitoring provisions as essential parts of the 2022 Settlement, nor was monitoring part of Plaintiffs' request in their 2019 TRO Motion that resulted in this Settlement. This is not surprising, as the FSA—which is currently still in place—allows class counsel to conduct attorney-client visits with class members in CBP facilities to assess CBP's custodial conditions and care of class members. *See*, *e.g.*, 2-ER-252 (explaining that, pursuant to the FSA, "class counsel coordinated monitoring visits at the El Paso and [RGV] Sectors of [CBP] to interview detained members," during which *Flores* counsel obtained information about alleged *Flores* violations and thus filed the 2019 TRO Motion). The district court's order relied solely on this non-essential provision and

ignored CBP's general compliance with the essential and core requirements to conclude erroneously that CBP failed to substantially comply.

Because the district court required perfect compliance and ignored CBP's general compliance with the Settlement, including its essential and core provisions, the district court's conclusion that CBP failed to "substantially comply" was legally erroneous. This Court should therefore reverse the district court's order and remand with instructions to determine whether CBP "substantially" complied with the Settlement.

### 3. The district court erred in failing to apply all four factors to determine whether modification was warranted.

As explained above, if permissible at all, partially modifying a consent decree to extend the obligations imposed on an institutional defendant is warranted only if Plaintiffs show the following four elements: (1) a significant factual or legal change occurred after the parties executed the Settlement; (2) they did not anticipate the change when they entered into the Settlement; (3) the changed circumstance makes compliance with the consent decree "more onerous, unworkable, or detrimental to the public interest"; and (4) the proposed modification of the Settlement is "suitably tailored to resolve the problems created by the changed . . . conditions." *Lab./Cmty. Strategy Ctr.*, 564 F.3d at 1120 (quoting *Asarco*, 430 F.3d at 979).

The district court determined only that Plaintiffs met two of these conditions: changed circumstances and suitably tailored relief. It did not address whether the

43

parties anticipated the changed circumstances or whether the changed circumstances were detrimental to the public interest, even though the government contested that Plaintiffs had established these two conditions. *See* 2-ER-48 (arguing that Plaintiffs anticipated CBP's alleged noncompliance because the Settlement provided that, at times during the settlement period, CBP "may be able to only partially comply" and that disputes may arise); 2-ER-49 (arguing that the alleged noncompliance is not detrimental to the public interest because Plaintiffs are still able to monitor conditions and seek enforcement of the FSA, and because CBP has incorporated the Settlement into its guidance). Because Plaintiffs bore the burden to show "all four" conditions for modification were present, the district court erred in modifying the 2022 Settlement without determining whether Plaintiffs satisfied their burden. *Cf. Lemoge v. United States*, 587 F.3d 1188, 1192 (9th Cir. 2009) (concluding that the district court abused its discretion by failing to correctly conduct the *Pioneer–Briones* analysis, because "[w]hile the district court conducted analysis related to the first three factors, the district court did not consider the fourth factor, good faith, or, as required under the circumstances of this case, the prejudice the Lemoges would suffer if their Motion was denied"). Remand is required.

### 4. The district court did not suitably tailor the modification based on the alleged noncompliance that it found.

Even assuming the JCM's inability to review the implementation of CBP's monitoring protocols was a significant change in circumstance warranting

44

modification, the district court did not tailor the modification to address this issue. A modification must be "tailored to resolve the problems created by the change in circumstances." *Rufo*, 502 U.S. at 391. "A court should do no more, for a consent decree is a final judgment that may be reopened only to the extent that equity requires." *Id.*

Without explanation, the district court extended the entire 2022 Settlement—which includes dozens of obligations—for 18 months, even though the only changed circumstance it found warranting modification was that CBP did not meet the JCM's additional criteria that CBP demonstrate how it implements its monitoring protocols. 1-ER-12–13. The district court's decision to extend dozens of unrelated provisions, most of which CBP had indisputably complied with, did not narrowly address the alleged problem created by the JCM's new requirement that CBP demonstrate how it implements its monitoring protocols. If anything, the district court should have only permitted the JCM to review implementation of the new monitoring protocols over a limited six-month period. But because it provided much broader relief, the district court abused its discretion. This Court should therefore reverse the district court's decision and remand with instructions to narrowly tailor any modification of the Settlement to CBP's implementation of monitoring protocols.

45

## VIII. CONCLUSION

The district court erred in applying Rule 60(b) to the Settlement because the Settlement is not a consent decree. The district court took no affirmative action that made the Settlement a court order or judgment. Therefore, this Court should reverse.

In the alternative, if this Court finds that the Settlement is a consent decree, the district court erred by holding CBP to a standard found nowhere in the Settlement, requiring perfect compliance instead of substantial compliance, failing to apply all four of the required factors, and failing to suitably tailor the remedy imposed to the alleged changed circumstances.

This Court should reverse.

Dated: June 2, 2025                       Respectfully submitted,

                                          YAAKOV M. ROTH
                                          Acting Assistant Attorney General
                                          Civil Division

                                          DREW C. ENSIGN
                                          Deputy Assistant Attorney General
                                          Office of Immigration Litigation

                                          AUGUST FLENTJE
                                          Special Counsel for Immigration Litigation

                                          WILLIAM C. SILVIS
                                          Assistant Director

MICHAEL A. CELONE
KATELYN MASETTA-ALVAREZ
CHRISTINA PARASCANDOLA
LINDSAY M. VICK
Senior Litigation Counsel

*s/ Joshua C. McCroskey*
JOSHUA C. MCCROSKEY
Trial Attorney
U.S. Department of Justice
Civil Division
Office of Immigration Litigation
General Litigation and Appeals Section
P.O. Box 878, Ben Franklin Station
Washington, DC 20044
Telephone: (202) 305-1540
Facsimile: (202) 305-7000
Email: joshua.c.mccroskey@usdoj.gov

*Counsel for Defendants-Appellants*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate ACMS system on June 2, 2025.

I certify that all participants in the case are registered ACMS users and that service will be accomplished by the appellate ACMS system.

*s/ Joshua C. McCroskey*
JOSHUA C. MCCROSKEY
Trial Attorney
United States Department of Justice

A

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

## Form 17. Statement of Related Cases Pursuant to Circuit Rule 28-2.6

**9th Cir. Case Number(s)** <u>25-820</u>

The undersigned attorney or self-represented party states the following:

[  ] I am unaware of any related cases currently pending in this court.

[  ] I am unaware of any related cases currently pending in this court other than the case(s) identified in the initial brief(s) filed by the other party or parties.

[X] I am aware of one or more related cases currently pending in this court. The case number and name of each related case and its relationship to this case are:

- *Bondi v. Flores*, No. 24-3656. This appeal arises out of the same case in the district court. However, the issues on appeal are distinct.

**Signature** <u>*s/ Joshua C. McCroskey*</u>        **Date: June 2, 2025**

B

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

### Form 8. Certificate of Compliance for Briefs

**9th Cir. Case Number(s)** <u>25-820</u>

I am the attorney or self-represented party.

**This brief contains 10,950 words,** excluding the items exempted by Fed. R. App. P. 32(f). The brief's type size and typeface comply with Fed. R. App. P. 32(a)(5) and (6).

I certify that this brief *(select only one)*:

[X] complies with the word limit of Cir. R. 32-1.

[  ] is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

[  ] is an **amicus** brief and complies with the word limit of Fed. R. App. P. 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

[  ] is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

[  ] complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:
    [  ] it is a joint brief submitted by separately represented parties;
    [  ] a party or parties are filing a single brief in response to multiple briefs; or
    [  ] a party or parties are filing a single brief in response to a longer joint brief.

[  ] complies with the length limit designated by court order dated _____.

[  ] is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).


**Signature** <u>*s/ Joshua C. McCroskey*</u>     **Date: June 2, 2025**


C